D. Wesley Cornish, Esquire
Id #: 310865
Cornerstone Legal Group, LLC
1510 Cecil B. Moore Avenue, Suite 301
Philadelphia, PA 19121

**JURY**
Damage Assessment Required


**Attorney for Plaintiff**

## IN AND FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

*Plaintiff*

**Franklin Santana,**

**CIVIL ACTION**
Case No. _____

VS.

*Defendants*

**Perry Betts, et al** officially, personally and all together individually, personally, joint, and severally.

## VERIFIED COMPLAINT

1. Plaintiff Franklin Santana ("Santana") by and through counsel, D. Wesley Cornish, Esquire, verify the following complaint.

## INTRODUCTION

2. This is a complex civil action for RICO remedies authorized by the federal statutes at 18 U.S.C. § 1961 *et seq.*; for declaratory and injunctive relief; for actual, consequential, punitive, and exemplary damages; and for all other relief which this honorable Court deems just and proper under all circumstances which have occasioned this Initial COMPLAINT. See 18 U.S.C. §§ 1964 (a) and (c) ("Civil RICO").

3.  The primary cause of this action is a widespread criminal *enterprise* engaged in a *pattern of racketeering activity* across State lines, and a conspiracy to engage in *racketeering activity* involving numerous RICO predicate acts during the past fifteen (15) calendar years.

4.  The predicate acts alleged here cluster around widespread civil and constitutional deprivations committed by the Philadelphia Police Department, the Department's Commissioners and Supervisors, the City of Philadelphia, and many individual officers in particular acts and threats involving murder, kidnapping, dealing in controlled substances, bribery, mail fraud, wire fraud, obstruction of justice, obstruction of criminal investigations, obstructing state and local law enforcement, witness/victim/informant tampering, witness/victim/informant retaliation, interference with commerce, extortion, fraud related to identification documents, fraud related to access devices, returning/holding persons in peonage, and kidnapping to place persons into involuntary servitude.

5.  Other RICO predicate acts, although *appearing* to be isolated events, were actually part of the overall conspiracy and *pattern of racketeering activity* alleged herein, *e.g.* mail fraud and wire fraud.  See 18 U.S.C. §§ 1341 and 1344, respectively.

6.  The primary objective of the racketeering *enterprise* has been to inflict severe and sustained civil rights violations against the citizens of Philadelphia in addition to United States and foreign citizens, illegally traffic controlled substances, illicitly gain money through improperly earned overtime, bonuses, promotions, and court pay, placing citizens in economic and legal hardship to unlawfully compel false and/or privileged testimony, with the intent of impairing, obstructing, preventing and discouraging Plaintiff from reporting and remedying the conduct.

## JURISDICTION AND VENUE

7.  This Honorable Court has original jurisdiction pursuant to the civil RICO remedies at 18 U.S.C. §1964.

8.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question) and the Civil Rights Act of 1871, 42 U.S.C. §§1983, 1985, and 1988.

9.  This Court has supplemental jurisdiction over the state law claims made herein pursuant to 28 U.S.C. §1367.

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) in that Defendants reside in this district and virtually all of the acts described in this Complaint occurred in this district.

## STRUCTURE AND INCORPORATION OF PRIOR RELATED PLEADINGS, CRIMINAL MATTERS, AND GOVERNMENTAL COMMISSIONED REPORTS

11. Plaintiff now formally incorporate the following criminal, civil, legally commissioned reports, and all other related matters including any plea bargains, convictions, sentencing memorandums, pre-trial statements, stipulations, police reports, investigation memos, notes, evidence, transcripts, exhibits, therein referenced and/or supplemental material, as if all were fully set out here. These matters predated the Plaintiff's arrest and provided the City of Philadelphia, Commissioners Ramsey and Johnson, and numerous supervisory personnel both known and unknown to Plaintiff and his counsel.

   a. *Commonwealth v. John Sullivan*, **CP-51-CR-8585-2007, CP-51-CR-8586-2007, CP-51-CR-8604-2007**

   b. *Commonwealth v. Demetrius Tolloiver*, **CP-51-CR-8584-2007**

   c. *Commonwealth v. Joseph Carl Newton*, **CP-51-CR-3470-2010, CP-51-CR-1460-2010**

   d. *Commonwealth v. Hector Alicea*, **CP-51-CR-12626-2011**

   e. *Commonwealth v. Kyle Bouie*, **CP-51-CR-14659-2010**

   f. *Commonwealth v. Harry Briggs*, **CP-51-CR-831-2011**

   g. *Commonwealth v. Juan Delvila*, **CP-51-CR-8985-2008**

   h. *Commonwealth v. Tony Mason*, **CP-51-CR-208641-2006**

   i. *Commonwealth v. Isiah Morgan*, **CP-51-CR-1270-2008**

   j. *Commonwealth v. Leo Gardner*, **CP-51-CR-10527-2007**

   k. *Commonwealth v. Franklin Santana*, **CP-51-CR-7246-2010**

l.  *Commonwealth v. Jasmine Johnson*, **MC-51-CR-44232-2011**

m.  *Commonwealth v. Kevin Jones*, **MC-51-CR-44231-2011**

n.  *Commonwealth v. Joel Cruz*, **CP-51-CR-11857-2009**

o.  *Commonwealth v. Luis Sarmiento*, **CP-51-CR-2669-2007, MC-51-CR-730631-2006**

p.  *Commonwealth v. Maria Bauer*, **MC-51-CR-730251-2006**

q.  *Commonwealth v. Johnny Morales*, **MC-51-CR-730851-2006**

r.  *Commonwealth v. Garcia Andrea*, **MC-51-CR-730861-2006**

s.  *Commonwealth v. Juan Soler*, **CP-51-CR-809402-2004**

t.  *Commonwealth v. Rhaheam Hill*, **CP-51-CR-16335-2008**

u.  *Commonwealth v. Alexis Santiago*, **CP-51-CR-8135-2013, CP-51-CR-10059-2007**

v.  *Commonwealth v. Romel Anthony*, **CP-51-CR-7516-2010**

w.  *Commonwealth v. James Dowdy*, **CP-51-CR-7517-2010**

x.  *Commonwealth v. Ronald Purdie*, **CP-51-CR-11300-2008**

y.  *Commonwealth v. Ragib Witherspoon*, **CP-51-CR-6437-2008**

z.  *Commonwealth v. Jalil Williams*, **CP-51-CR-9983-2009**

aa. *Commonwealth v. James Fannings*, **CP-51-CR-3595-2008**

bb. *US v. Liciardello, Norman, Speiser, Spicer, Betts, and Reynolds*, **2:14-CR-412**

cc. *US v. Jeffrey Walker*, **2:13-CR-650**

dd. *US v. Rafael Cordero*, **2:12-CR-385-001, 14-3177**

ee. *US v. Robertito Fontan*, **2:12-CR-664**

ff.  *US v. Joseph Waters*, **2:14-CR-478**

gg. *Commonwealth v. Jalil Williams*, **CP-51-CR-9983-2009**

hh. *Mahari Bailey, Timothy Streaty, Fernando Montero, Preston Fulton, Gregory Blackmon, Jr., John Cornish, Carl Cutler, and Jewell Williams v. City of Philadelphia et al,* **2:10-CV-05952-SD**

ii. *NAACP et al v. City of Philadelphia,* **96-6045 E.D. Pa.**

jj. *Cliett v. City of Philadelphia,* **85-1846 (E.D.Pa. 1985)**

kk. *Spring Garden United Neighbors v. City of Philadelphia,* **614 F.Supp. 1350 (E.D.Pa. 1985)**

a. Integrity and Accountability Officer ("IAO") December 2003 Report on the Disciplinary System of the Philadelphia Police Department

b. 2002 Mayor's Task Force Report

12. This Court is encouraged to access all these pleadings, attested documents, and sworn testimony and other electronic evidence already published by the Philadelphia Common Pleas Court Clerk of Quarter Sessions and the Eastern District of Pennsylvania.

13. Plaintiff now formally incorporates these criminal complaints, civil complaints, and commissioned findings by reference, as if all were set forth fully here.

## PLAINTIFF

14. Plaintiff is Franklin Santana, an individual and resident of the Dominican Republic, who at the time of his arrest, conviction, and prosecution was a legal permanent resident of the United States of America and a legal permanent resident of Pennsylvania and the City and County of Philadelphia.

## DEFENDANTS

15. Defendant is **Thomas Liciardello,** a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

16. Defendant is **Brian Reynolds**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

17. Defendant is **Perry Betts**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

18. Defendant is **Jeffrey Walker**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

19. Defendant is **Michael Spicer**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

20. Defendant is **Jonathan Speiser**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

21. Defendant is **Linwood Norman**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

22. Defendant is **Rafael Cordero**, a former police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

23. Defendant is **Christopher Hulmes**, badge 7548, a suspended police officer for the Philadelphia Police Department, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

24. Defendant is **Joseph Waters**, a former judge in Pennsylvania's First Judicial District, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

25. Defendant is **Dawn Segal**, a judge in Pennsylvania's First Judicial District, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

26. Defendant is **Joseph J. O'Neill**, a judge in Pennsylvania's First Judicial District, who lives and resides in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

27. Defendant is **The Kintock Group**, a multistate business enterprise with offices at 580 Virginia Drive, Suite 250 Fort Washington, PA 19034.

28. Defendant is **Supervisor Carmona**, is employed by the Kintock Group with a business address of 580 Virginia Drive, Suite 250 Fort Washington, PA 19034.

29. Defendant is **Police Officer James Reilly**, Badge Number 1784, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

30. Defendant is the **City of Philadelphia**, a city of the first class, organized and existing pursuant to the laws of the Commonwealth of Pennsylvania, the Philadelphia Home Rule Charter and Philadelphia Code, with offices located at City Hall 1501 Market Street Room 215, Philadelphia, PA 19107.

31. Defendant is **Police Officer Patrick Banning**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

32. Defendant is **Sergeant Didonato**, Badge Number 8543, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

33. Defendant is **Police Officer Joseph McCauley**, Badge Number 5026, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

34. Defendant is **Police Officer Joseph Lister**, Badge Number 7545, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

35. Defendant is **Police Officer Erik Garnett**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

36. Defendant is **Police Officer David Aponte**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

37. Defendant is **Police Officer Kevin Devlin**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

38. Defendant is **Police Officer Cooner**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

39. Defendant is **Police Officer Jamie Brown**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

40. Defendant is **Police Officer Joseph McCloskey**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

41. Defendant is **Police Officer James O'Neill**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

42. Defendant is **Police Officer Leslie Simmons**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

43. Defendant is **Police Officer Nathan London**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

44. Defendant is **Police Officer Gina Jackson**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

45. Defendant is **Police Officer Steven Ratka**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

46. Defendant is **Police Officer Charles Kapusniak**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

47. Defendant is **Police Officer Maldonado**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

48. Defendant is **Police Officer Maurice Rodriguez**, Badge number 9974, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

49. Defendant is **Police Officer Scott Schweizer**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

50. Defendant is **Police Officer Erik Pross**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

51. Defendant is **Police Officer Vincent Nowakowski**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

52. Defendant is **Police Officer Leroy Ziegler**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

53. Defendant is **Police Officer Shaun Parker**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

54. Defendant is **Police Officer James Weiss**, badge 0666, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

55. Defendant is **Police Officer Mark Palma**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

56. Defendant is **Police Officer Cooney**, badge number 2912, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

57. Defendant is **Police Officer Frank Bonnett**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

58. Defendant is **Police Officer Joseph Bologna**, badge number 552, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

59. Defendant is **Police Officer Lynch**, Badge Number 1386, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

60. Defendant is **Police Officer Flynn**, Badge Number 2638, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

61. Defendant is **Sergeant Giulian**, Badge Number 8838, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

62. Defendant is **Police Officer Rickman Williams-Jackson**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

63. Defendant is **Police Officer Gregory Barber**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

64. Defendant is **Police Officer Kevin Gorman**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

65. Defendant is **Police Officer John O'Hanlon**, Badge #0100, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

66. Defendant is **Police Officer Richard Kurth**, Badge #8323, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

67. Defendant is **Police Officer Thomas Kelly**, Badge #2297, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

68. Defendant is **Police Officer Thomas Kuhn**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

69. Defendant is **Police Officer Jeffrey Cujdik**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

70. Defendant is **Police Officer Richard Cujdik**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

71. Defendant is **Police Officer Kevin Cuddahy**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

72. Defendant is **Police Officer Thomas Clancy**, Badge #956, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

73. Defendant is **Police Officer Shawn Carey**, Badge #1903, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

74. Defendant is **Police Officer Thomas Tolstoy**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

75. Defendant is **Police Officer Carl Stubbs**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

76. Defendant is **Police Officer Leslie Simmons**, badge #4561, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

77. Defendant is **Police Officer Seigafuse**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

78. Defendant is **Police Officer Raymond Singleton**, badge #5014, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

79. Defendant is **Police Officer Michael Edinger**, badge #1455, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

80. Defendant is **Police Officer Hardy**, badge number 1325, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

81. Defendant is **Police Officer Christopher Brooks** Badge number unknown, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

82. Defendant is **Police Officer Thomas Wright**, Badge Number 6123, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

83. Defendant is **Police Officer Eric Dial**, Badge #6130, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

84. Defendant is **Police Officer Stephen Dmytryk**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

85. Defendant is **Police Officer Robert Otto**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

86. Defendant is **Police Officer A. Viega**, Badge #9099, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

87. Defendant is **Police Officer James Smith**, Badge #0170, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

88. Defendant is **Police Officer Eric Johnson**, Badge #8025, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

89. Defendant is **Police Officer Roosevelt Hagins, Jr.**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

90. Defendant is **Police Officer Harvey**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

91. Defendant is **Police Officer Holts**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

92. Defendant is **Police Officer Taylor** Badge Number 5371, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

93. Defendant is **Police Officer Jones** Badge Number 9851, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

94. Defendant is **Police Officer Ellingsworth** Badge Number 5349, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

95. Defendant is **Police Officer Brant Miles**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

96. Defendant is **Police Officer Robert McDonnell, Jr.**, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

97. Defendant is **Charles Ramsey**, the duly appointed Police Commissioner of the Philadelphia Police Department with principal offices located in the Police Administration Building, 8th and Race Streets, Philadelphia, PA 19107.

98. Defendant is **First Deputy Commissioner Richard Ross, Jr.**, c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107 with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

99. Defendant is **Deputy Commissioner Kevin Bethel**, c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107 with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

100. Defendant is **Deputy Commissioner Thomas Wright**, c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107 with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

101. Defendant is **Deputy Commissioner William Blackburn**, c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107 with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

102. Defendant is **Deputy Commissioner Denise Turpin**, c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

103. Defendant is **Philadelphia Police Department Chemists John Does 1-12**, each is a police chemist for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

104. Defendant is **Philadelphia Police Department Chemists Jane Does 1-12**, each is a police chemist for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

105. Defendant is **Philadelphia Police Officers John Does 1-35**, each is a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

106. Defendant is **Philadelphia Police Officers Jane Does 1-35**, each is a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

## FACTUAL BACKGROUND

107. On or about January 28, 2010 in the City and County of Philadelphia and within the Eastern District of Pennsylvania Defendants Thomas Liciardello, Brian Reynolds, Michael Spicer, Perry Betts and other members of the narcotics strike force including other named Defendants established a narcotics investigation regarding the Plaintiff.

108. Defendants Thomas Liciardello, Brian Reynolds, Michael Spicer, Perry Betts and other members of the narcotics strike force attested to and testified that:

    a. On January 28, 2010 Defendants Liciardello and Reynolds received information from a source of information about a Hispanic male operating a red van who will be delivering a large amount of heroin to the 2700 Block of North Fairhill Street between the time period of 6:45pm and 7:45pm, and that these controlled substances would be delivered to a black male.

    b. At approximately 7pm, Defendants Spicer and Betts were conducting surveillance on the 2700 Block of North Fairhill Street at which time police observed a Hispanic male later identified as Franklin Santana exit a red van and walk over to a black Lumina operated by a black male and as Santana was walking over to the Lumina it appeared that Santana was holding a large item inside his right jacket pocket.

    c. Defendant Spicer relayed information to his back-up Officers.

    d. Defendant Liciardello approached the passenger side of the vehicle at which time the Plaintiff was looking in the direction of back up officer approaching the vehicle.

    e. Defendant Liciardello observed the Plaintiff discard to the floor of the Lumina one square paper item which was found to contain fifteen bundles each containing fourteen clear Ziploc packets

each containing a blue glassine wrapper each stamped "white demon" each containing alleged heroin.

f. The Plaintiff was taken out of the vehicle at which time the Plaintiff discarded inside the vehicle from his jacket pocket two square paper wrapped items each containing bundles of heroin each containing fourteen clear Ziploc packets each containing a blue glassine wrapper stamped "white demon" each containing alleged heroin.

g. The Plaintiff was placed into custody and recovered from his person was one cell phone.

h. The total number of heroin packets recovered was four hundred and twenty packets which were Nik Test A & L by Defendant Liciardello and were found to be positive for heroin.

109. The Plaintiff contests the claims made by the Defendants regarding his conduct in paragraph 103.

110. The Plaintiff at the time of his arrest owned a home on 2738 North Fairhill Street, Philadelphia, Pennsylvania, with Evelyn Cepeda.

111. Prior to his arrest by the Defendants, Plaintiff had never been convicted of any narcotics related offense and only had one prior misdemeanor conviction.

112. Plaintiff parked his vehicle, exited, and started to walk past another vehicle towards his home when Defendants Liciardello and Reynolds emerged from a car one spot behind that automobile.

113. Plaintiff was carrying a bag in his hands as he was walking towards his house and the Defendants approached him.

114. Plaintiff was never present in any other car, including the alleged Lumina, after he exited his vehicle and started to return home.

115. Plaintiff at no time possessed any narcotics within his vehicle or thereafter when he exited and was approached by police.

116. Plaintiff had legally obtained money on his person that was removed by the arresting Defendants and did not place this material upon any property receipt, evidentiary log, or like record.

117. Plaintiff was pushed, shoved, cursed at, and threatened with bodily harm while Defendants Betts, Spicer, Reynolds, and Liciardello arrested him.

118. Defendants Betts, Spicer, Reynolds, and Liciardello questioned Plaintiff without providing him with his *Miranda* rights and threatened him with further harm if he did not give up his "connection".

119. Plaintiff was handcuffed incredibly tightly, hurting his hands and despite repeated requests the Defendants would not loosen them.

120. Plaintiff also avers the Defendants alleged confidential informant/cooperating witness/source of information was fabricated to create leverage to attempt to have the Plaintiff cooperate in a police investigation.

121. Defendants Liciardello, Reynolds, Spicer, and Betts searched the Plaintiff's phone without his permission nor consent and fabricated information to prosecute him.

122. These Defendants provided attested to and sworn paperwork regarding the Plaintiff's investigation and arrest to the Philadelphia District Attorney's Office for further prosecution.

123. On February 5, 2010, the Plaintiff had a preliminary arraignment at 1301 Filbert Street Philadelphia, Pennsylvania in Courtroom 406 before Defendant Joseph O'Neill.

124. On or about February 5, 2010 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

125. On or about March 10, 2010 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

126. At the Plaintiff's preliminary hearing on May 18, 2010, Defendant Liciardello testified falsely about events regarding the Plaintiff.

127. At the Plaintiff's preliminary hearing signed and attested to police paperwork regarding Plaintiff's arrest and investigation were submitted and accepted into evidence including approval forms completed by Defendant Joseph McCloskey and chemistry reports completed by Defendant Kandis Gilliard.

128. On or about May 18, 2010 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

129. On or about June 8, 2010 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

130. On or about June 23, 2010 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

131. On June 23, 2010, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

132. On or about August 2, 2010 a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

133. On August 2, 2010, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

134. On or about September 9, 2010, a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

135. On September 9, 2010, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

136. On or about September 22, 2010, Defendant Liciardello falsely testified about an alleged source of information/confidential informant.

137. On or about September 22, 2010, a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

138. On September 22, 2010, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

139. On or about September 24, 2010, a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

140. On September 24, 2010, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

141. On or about September 27, 2010, a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public

viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

142. On September 27, 2010, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

143. On or about October 4, 2010, a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

144. On October 4, 2010, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

145. On or about January 7, 2011, a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

146. On January 7, 2011, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

147. On or about March 1, 2011, a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

148. On March 1, 2011, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

149. On or about March 4, 2011, a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing,

commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

150. On March 4, 2011, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

151. On or about April 7, 2011, a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

152. On April 7, 2011, a hearing notice regarding this matter was created and sent via the United States Postal Service to all parties involved with the Plaintiff's criminal matter.

153. On June 20, 2011, the Plaintiff had no choice except pleading guilty due to the Defendants Liciardello, Betts, Spicer, Reynolds, and others falsehoods and fabricated evidence.

154. On June 20, 2011, the Plaintiff was sentenced to 1.5-3 years of confinement and a maximum of 7 years of probation to be served consecutively to his incarceration.

155. On or about June 20, 2011, a docket entry was electronically created by the Philadelphia Criminal Office of Judicial Records, and entered onto the state database, which is available for public viewing, commonly known as "The Unified Judicial System of Pennsylvania Web Portal" which involves telephone and other interstate communication methods.

156. On August 19, 2014 on Plaintiff's behalf a motion for a new trial was filed.

157. On October 27, 2014 the Honorable Judge Susan Schulman ordered a hearing for Plaintiff's motion for a new trial.

158. On January 9, 2015 the Honorable Judge Shelia Woods-Skipper, granted the Plaintiff's Post-Conviction Relief Act Petition and ordered a new trial for which the Commonwealth made a nolle prosequi motion which was granted by the Court.

159. As a result of the Plaintiff's fraudulently obtained and subsequently overturned and nolle prossed conviction, he was deported from the United States by order of a federal immigration judge at the request of Immigration and Customs Enforcement and the United States Attorney's Office.

160. Due to his deportation, Plaintiff was unable to earn enough money to pay rent to have his home on 2738 North Fairhill Street, Philadelphia, Pennsylvania, in compliance with all applicable laws and on November 8, 2014 the City of Philadelphia sought foreclosure and a sheriff's sale.

**I.   Defendant Roberito Fontan**

161. Officer Roberito Fontan was arrested by the federal government, charged, convicted, and sentenced for making false statements to federal investigators. In 2003, Fontan recruited Person #1 to become a confidential informant and recommended her as a confidential informant to other law enforcement officers. Several months later, Fontan became intimately involved with Person #1. During their relationship, Fontan gave gifts and money to Person #1. In 2007, the Drug Enforcement Administration (DEA) began investigating Person #1's former paramour, a suspected drug dealer, and Fontan was assisting with the investigation. In 2008, the FBI began investigating a suspected leak of information in the DEA investigation. As part of the leak investigation, the FBI interviewed Fontan about his intimate relationship with Person #1. The jury found that Fontan lied to agents about his relationship with Person #1 and about giving gifts and money to Person #1. Roberito Fontan was sentenced for making false statements to investigators on April 28, 2014.

162. Roberito Fontan facilitated in this civil rico conspiracy to commit perjury, obstruction of justice, obstruction of law enforcement, drug trafficking, and carrying a firearm in relation to a crime of violence by assisting in distributing narcotics, property purchased with narcotic proceeds, money directly related to armed narcotics trafficking, along with numerous other Defendants.

**II.   Defendant Christopher Hulmes**

163. On  August 8, 2014 Philadelphia Police Officer, Patrick Banning was removed from street duty as he
     was under investigation by the Philadelphia Police Internal Affairs Department stemming from his role
     in the ***Commonwealth v. Rowland*** case. On August 6, 2014 Officer Banning's then partner Christopher
     Hulmes admitted to lying in a case where Officer Banning's signature is on the associated police
     paperwork including a search warrant application for Mr. Rowland's home and vehicle. Officer Hulmes
     has also been removed from active duty while Internal Affairs investigates his conduct.

164. On April 23, 2015 Officer Christopher Hulmes was arrested following an indictment related to perjury
     in a previous narcotics investigation.

165. Officers Banning, Reilly, Ratka, DiDonato, and Hulmes have been co-workers and partners and/or
     assigned to work together very often regarding narcotics investigations.

166. These Police Officers routinely stopped vehicles, entered and searched suspected drug dealers'
     properties, used threats and physical violence to steal property, cash, and drugs during the process.

167. The money these Defendants stole was distributed to the other Defendants to further their criminal
     conspiratorial enterprise.

168. The drugs and other illicit narcotics stolen by these Defendants was trafficked and distributed to further
     their illegal enterprise.

### III.  Jeffrey Walker

169. On or about May 21, 2013, in Philadelphia, Pennsylvania, Defendant Jeffrey Walker did knowingly and
     unlawfully obstruct, delay, and affect commerce, and the movement of articles and commodities in
     commerce, by robbery and extortion, in that Jeffrey Walker by means of actual or threatened force of
     violence or fear of injury, immediate and future to the victim's person, and by use of a firearm; and by
     use of his position as a Philadelphia Police Officer, did obtain personal property, cash, and marijuana
     unlawfully from another, with and without his consent, which was not due Jeffrey Walker, because of

his position as a Philadelphia Police Officer, and thus, under color of official right. All in violation of Title 18, United States Code, Sections 1951, 924(c)(1) and 2.

170. Officer Walker has been employed by the Philadelphia Police Department (PHPD) since June 1989. He is assigned to the Narcotics Field Unit, ("NFU"). Jeffrey Walker has been assigned to the NFU since March 1999. The NFUs are tasked with investigating drug dealers and drug organizations within the city of Philadelphia.

171. A cooperating witness (Person #1), told the FBI that Jeffrey Walker recently had approached him and told him that he wanted Person # 1 to set up drug dealers so that Jeffrey Walker could rob them.

172. Starting on May 6, 2013, Person #1 met with Jeffrey Walker at the FBI's direction and had conversations with him, either face to face or on the telephone. During the conversations, Jeffrey Walker proposed a number of plans to Person #1 which involved Person #1 setting up a drug dealer so that Jeffrey Walker could rob this drug dealer of some or all of his drugs and money. During each conversation, Jeffrey Walker 's plans for how to conduct this robbery continuously changed.

173. On May 6, 2013, Person #1 met with Jeffrey Walker and recorded the meeting. During the conversation, Person # 1 told Jeffrey Walker that he was dealing with an individual who was dealing with a large amount of drugs and money. Jeffrey Walker told Person #1 that he wanted to find out where the individual lived so that he could rob him. Jeffrey Walker advised that he wanted to rob the individual on a Monday because that is his day off and he does "all my dirt on Mondays." Jeffrey Walker also described how in the course of stopping a car for suspected drug violations, he could take a larger portion of the drugs in the car for himself and leave a smaller amount behind which would be the amount Jeffrey Walker claimed to the suspect that he found. Jeffrey Walker also indicated he would then supply the drugs to Person # 1, telling him that once he gave the drugs to Person #1, that was on him. Jeffrey Walker also told Person #1 about another plan to rob the drug dealer in which Jeffrey Walker would steal half a brick of marijuana right from the drug dealer's possession after he had been

setup by Person #1. Jeffrey Walker stated, "Let me grab the mother fucker as he has the brick already on him. I could rob him for the half a brick."

174. On May 10, 2013, Person #1 again met with Jeffrey Walker and recorded the meeting. Jeffrey Walker told Person #1 that he had an individual who could give Jeffrey Walker an amount of powder cocaine. Jeffrey Walker told Person #1 that once Person #1 found out what was inside the house of the drug dealer, hereinafter referred to as Person #2, that Person #1 (should call Jeffrey Walker. At that point, Jeffrey Walker said that Person #1 should go out with the drug dealer to get a drink. Jeffrey Walker advised that he would then pull over the car, plant some drugs, and arrest the drug dealer (Person #2). Jeffrey Walker advised that he would then take the keys of the drug dealer, go to the drug dealer's house and take the money found inside.

175. On May 17, 2013, during a recorded conversation, Jeffrey Walker and Person #1 again discussed their plans to rob Person #2. Jeffrey Walker told Person #1 that when they get in the Person #2's house to steal the drugs and money, that whatever they found in the house, half would be Person # 1's. Jeffrey Walker also told Person # 1 to be sure to use gloves when they break in. Jeffrey Walker also told Person #1 that they would divide the money, at one point saying they would be rich and at another point saying we will divide it down the middle. During a conversation that occurred on May 20, 2013, Jeffrey Walker explained to Person #1 that he (Jeffrey Walker) could obtain a couple ounces of cocaine which he could then throw in the car of Person#2 so that Person#2 could be falsely arrested. At one point in the conversation, Jeffrey Walker told Person#2, that he'd have his people stop him, and he'd throw the drugs in his car, and go from there. Jeffrey Walker also then described to Person #1 how they would go back to Person#2's house after Person#2 had been arrested. Jeffrey Walker told Person #1 that after they had taken the drugs and money they would go somewhere and "break it up," that is, split it between them. During the course of this conversation, Person # 1 told Jeffrey Walker that Person #2 dealt drugs "down South."

176. On May 21, 2013, at FBI direction, at approximately 5:20p.m., Person #1 and Person#2 parked a black

Volkswagen Jetta, bearing Virginia license plate XNB-7771, in the vicinity of Spiro's Bar, located at

3962 W. Girard Ave., Philadelphia, P A. Person #1 and Person#2 exited the Jetta and proceeded into the

bar. At approximately 5:40p.m., Jeffrey Walker drove up near the Jetta and exited his vehicle. Jeffrey

Walker opened a door to the Jetta and appeared to place something in the vehicle. Jeffrey Walker closed

the door and returned to his vehicle. At approximately 5:44p.m., Person #1 received information from

Jeffrey Walker indicating that he (Jeffrey Walker) had placed drugs in the Jetta.

177. At approximately 6:00p.m., Person #1 and Person#2 exited Spiro's Bar. Jeffrey Walker was observed in

his vehicle parked outside of Spiro's. Person#2 drove away from the area by himself in the Jetta. Jeffrey

Walker also drove from the area, and began following the Jetta. At approximately 6:25p.m., Person#2's

vehicle was pulled over by a Philadelphia Police vehicle on 6th Street between Vine Street and Race

Street. Two uniformed officers and Jeffrey Walker were observed outside ofPerson#2's car. At the time,

it is believed that Jeffrey Walker was armed with his loaded service revolver, a Glock 21.

178. At approximately 7:13p.m. another Philadelphia Police vehicle arrived at the location ofPerson#2's

Jetta on 6th Street. An officer with a canine exited the second marked unit and appeared to conduct a

sniff search of the vehicle. At approximately 7:22p.m., Jeffrey Walker drove away from the area in his

vehicle and contacted Person #1 and indicated that he had the key to Person#2's home. A Philadelphia

Police Department Arrest Report (PARS), authored by Jeffrey Walker, was generated concerning the

arrest of Person#2. The PARS indicated that Highway Patrol officers observed a black Volkswagen Jetta

bearing Virginia license plate XNB-7771 driving erratically at a high rate of speed traveling eastbound

on Interstate 676 at approximately 6:20PM. The officers followed the Jetta traveling south on 6th Street.

The report further indicates that Officer Jeffrey Walker was driving in the area, observed what was

occurring, and pulled in front of the Jetta. The stop occurred in the vicinity of 6th Street and Race Street.

179. The PARS indicated that one of the Highway Patrol officers observed Person#2 place an object under the seat. Person#2 was removed from the vehicle and the officer located a "dark colored Arizona bottle" under the seat. A large, solid object was inside the bottle. The Highway Patrol officer believed that the bottle contained narcotics and requested a K-9 Unit to the location. The K-9 Unit responded to the location and the narcotics canine performed a sweep of the vehicle, with the canine providing a positive indication for the presence of narcotics. Jeffrey Walker then directed the Highway Patrol officers to take the Jetta to the Narcotics Field Unit (NFU) Headquarters pending a search warrant. The PARS indicated that a search warrant was executed by members of the NFU at approximately 9:50p.m. A clear knotted baggie containing bulk cocaine with the weight of 28 grams was found in the Arizona bottle. The PARS further stated that Jeffrey Walker conducted a Nik Test G on the alleged cocaine with a positive reaction for cocaine." The PARS indicated it was completed by Jeffrey Walker.

180. At approximately 11:12 p.m., Jeffrey Walker was observed leaving the NFU parking lot driving his personal vehicle. At approximately 11:39 p.m., Jeffrey Walker was observed exiting his vehicle in the vicinity of 5646 Florence Avenue, Philadelphia, PA, the alleged house of Person#2. Person # 1, who was parked in the area, exited his vehicle and met Jeffrey Walker. At approximately 11:42 p.m., Jeffrey Walker and Person #1 entered the front door of 5646 Florence Avenue. At approximately 11:48 p.m. Jeffrey Walker and Person #1 exited 5646 Florence Avenue. Jeffrey Walker and Person # 1 were taken into custody. Jeffrey Walker had approximately $15,000 in his possession, which was the alleged proceeds of drug sales, which he had taken from the location. Jeffrey Walker had in his possession his service revolver at this time. Person #1 had approximately five pounds of marijuana.

181. After his arrest, Jeffrey Walker admitted planning the false arrest of Person #2, planting the cocaine in Person #2's vehicle, taking a key from Person #2, using that key to enter Person #2's alleged house, and taking approximately $15,000 found inside. On February 24, 2014 Jeffrey Walker pled guilty to the

charges listed in the indictment admitting he was responsible for the charges listed therein and he
offered testimony against his coconspirators.

182. Jeffrey Walker besides these convictions committed numerous other overt and criminal acts in
furtherance of this conspiracy.

183. Jeffrey Walker in association with Supervisor Carmona, and at least 4 other Kintock employees, who
operated from the Kintock facility, on approximately the 300 Block of East Erie Avenue, from
approximately 2007 until May 2013.

184. Jeffrey Walker provided confidential police intelligence, files, and other information to Supervisor
Carmona and other employees at the Kintock Group who were distributing narcotics within the facility,
to further their joint criminal enterprise.

185. Jeffrey Walker received payments from a narcotics trafficking group operating in the Waterloo,
Cumberland, Hope, and Huntingdon Streets area for providing information.

186. Jeffrey Walker received payments from Supervisor Carmona and his cousin, who was a mid-level
manager

187. Jeffrey Walker along with Defendants Brian Reynolds, Jonathan Speiser, Perry Betts, Thomas
Liciardello, Michael Spicer, Charles Kapusniak, Jeffrey Cujdik, Richard Cujdik, Thomas Tolstoy, Scott
Schweizer, and Eric Dial utilized information developed under the guise of narcotics and crime
investigations to arrest and prosecute their competitors, steal their illicit narcotics to distribute
themselves or via other persons, and improperly obtain other property including money and electronics.

IV.   **Thomas Liciardello, Perry Betts, Linwood Norman, Jonathan Speiser, Michael Spicer, and**
**Brian Reynolds**

188. On July 30, 2014 Philadelphia Police Officers, Thomas Liciardello, Brian Reynolds, Perry Betts, and
Michael Spicer were arrested by the federal government and were indicted for twenty-six (26) separate
offenses spanning a six (6) year period from February 2006 until November 2012, including: abuse of

authority, Hobbs Act robbery, extortion, kidnapping, conspiracy, falsifying police reports, narcotics trafficking, violations of citizens' civil rights, and racketeering.

189. These Officers would routinely stop vehicles and enter and search the properties of suspected drug dealers, using threats and physical violence to steal property, cash, and drugs during the process. There are twenty-two separate incidents during which the Officers' malfeasance and criminal acts allowed them to illegally obtain in drugs, property, and cash over five-hundred thousand dollars ($500,000.00).

190. Although, these Officers have been acquitted of all criminal charges, due to the their actions, the Philadelphia Police Department and the Philadelphia District Attorney's Office have admitted that these Officers lack credibility and have continued to not argue motions to reverse convictions they obtained, over 150, as of June 23, 2015.

**V.   Rafael Cordero**

191.  Rafael Cordero was arrested and sentenced by the Federal District Court for the Eastern District of Pennsylvania to 180 months incarceration followed by a 36 month term of probation, a $5,000 fine, and a $400 mandatory assessment.

192. Cordero was a 22-year veteran of the Philadelphia Police  Department when he was charged and convicted of two counts of obstruction of justice and two counts of false statements

193. In 2010, the DEA Philadelphia Division began an investigation into a heroin trafficking organization which revealed that Edwin Medina (aka "June") was distributing  large quantities of prepackaged heroin within the 25th Police District. It further revealed that Medina and his associates, including Garcia, his "right-hand" man, were using a  garage located at 538 East Indiana Avenue in Philadelphia to store narcotics and guns, count money, and hold meetings regarding the drug distribution business. At the time that Garcia joined Medina's enterprise, he had been serving as a confidential informant for the FBI, primarily working with FBI Task Force Officer Robert Clark. Upon learning of Garcia's criminal

behavior and duplicity, however, the FBI discreetly deactivated Garcia as a source, and thereafter provided him with misinformation regarding their investigation into Medina.

194. The DEA obtained authorization to wiretap Garcia's and Medina's phones. Intercepted calls and texts revealed several incriminating contacts between Garcia and Cordero. On June 3, 2011, the DEA installed a service camera on a light pole to monitor activities occurring at Medina's garage. On that same day, Garcia called Cordero and told him that he was concerned that a pole camera had been mounted at that location. Cordero asked Garcia if "June knows" about the camera, and promised Garcia that he would "check it out." The next day, while on duty, Cordero went to investigate the camera, and after doing so, called Garcia to provide him information regarding its location, the direction it was pointed, its technical capabilities and strengths. Garcia passed the information to Medina, who then removed three cars and three guns from the garage. After listening to these conversations, the FBI then obtained authorization to wiretap Cordero's phone.

195. On July 21, 2011, the DEA and FBI arrested a number of targets within the Medina drug trafficking organization. On that night, Garcia informed Cordero about the arrests, and notified him that law enforcement were at the garage. Cordero then went to the garage, parked his vehicle and peered into it through a window to investigate. DEA Special Agent Mark Koss, who was inside, observed Cordero's actions and confronted him, causing Cordero to hold up his police radio and state that he was "on the job.". Immediately after leaving the scene, Cordero called Garcia and provided him with information about the law enforcement activities he had just observed in the garage. Cordero then called his supervisor Sergeant James Muller to report that he had been driving by the garage and had seen the police activity when he stopped to see what was going on, and that he had been pulled aside by law enforcement. He mentioned nothing about Garcia. Later in the day, Cordero told Garcia to lie to Officer Clark about whether Garcia knew about where any money or drugs were located. Over the next several days, when Cordero and Garcia spoke over the phone, Cordero learned that Garcia had removed items

from the garage after the search, including a DVR tape that showed Cordero's presence at the search. During one call, Cordero instructed Garcia to tell law enforcement that Garcia's truck was in the garage at the time of the search because Garcia was paying rent to keep it there.

196. On July 26, 2011, FBI Agent Brian Monahan and Philadelphia Police Task Force Officer Joseph Chilutti interviewed Cordero. At the trial, Agent Monahan testified that Cordero explained that he went to the garage because he knew it was used to facilitate the storage and sale of narcotics and firearms. He denied knowing anyone associated with the garage. Cordero also stated that he was at the garage because he had seen police activity in the area, and the only person he called after he left the search was his supervisor, Sergeant Muller. However, there was evidence that after these conversations, Cordero spoke with his brother Enrique Cordero, who asked Cordero, in code, whether he should come to Cordero's house to retrieve the money that Garcia was storing there. Enrique Cordero testified that shortly after that call, he called Cordero's wife and arranged to meet discreetly down the street from Cordero's home, where he received a bag containing $20,000 in cash.

197. At trial, Cordero denied any knowledge of Garcia's involvement in drug distribution and insisted that his actions on behalf of Garcia were because he believed that Garcia was an FBI informant. He testified that he did not know Medina. He testified he never told Agents Monahan or Koss that he believed the garage was used for the storage and sale of narcotics, and insisted that their testimony to the contrary was false.

198. On July 31, 2012, a jury found Cordero guilty of two counts of obstruction of justice and two counts of false statements within a federal matter.

199. The Probation Office submitted a Presentence Investigation Report ("PSR") that determined a base level offense of 30. As the offense involved at least 3 but less than 10 kilograms of heroin, the use of a dangerous weapon, and the obstruction of an investigation of a drug trafficking organization, the base level offense was determined to be 36.

200. The Probation Office further determined that Cordero had abused a position of trust, and therefore applied a 2-level enhancement under U.S.S.G. § 3B1.1.

201. Finally, the Probation Office found Cordero had obstructed justice by testifying falsely at trial, and applied a 2-level enhancement under U.S.S.G. 3C1.1, which resulted in a total offense level of 34.

202. At the sentencing hearing on June 25, the parties agreed that the guideline calculation as determined by the Probation Office was correct.

203. Cordero argued for a downward variance from this range. The Court rejected Cordero's contention he did nothing to aid a drug trafficking organization, and only attempted to aid his brother, who he believed was an informant. The Court noted the evidence overwhelmingly showed that Cordero was trying to help his brother sell drugs and defeat a federal investigation of a major drug trafficking organization.

204. Additionally, the Court noted the seriousness of the offense he had committed, and that Cordero, captured on tape, had come across as arrogant, defiant, and completely contemptuous of federal authority.

205. Rafael Cordero along with numerous other Defendants utilized secret police information obtained from other officers, agencies, and informants to profit from and distribute the monetary funds between named Defendants and others both known and unknown to Plaintiff.

## NOTICE TO DEFENDANTS CITY OF PHILADELPHIA, CHARLES RAMSEY, KEVIN BETHEL, RICHARD ROSS, JR, THOMAS WRIGHT, DENISE TURPIN, WILLIAM BLACKBURN

206. In *Monell v. NY Dept. Social Services*, 436 U.S. 658 (1978), the Court held that municipal bodies sued under 1983 cannot be entitled to an absolute immunity.

207. The City of Philadelphia, Philadelphia Police Department and in particular Defendants Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin were put on notice either through personal knowledge or information provided to their predecessors, in particular former police chief Sylvester Johnson, as early as 1986, about the rampant violations of

citizens federal and Commonwealth constitutional rights, obstructions or justice, evidence tampering, perjury, mishandling of confidential sources/informants, hindering police investigations, and other similar acts on the part of those they were responsible for supervising years before and after the Plaintiff were arrested and prosecuted, please refer to the herein referenced criminal and civil cases, in addition to the governmentally commissioned reports regarding the Philadelphia Police Department.

208. For a more thorough list of the specific materials for which these Defendants were provided notice see the previous section "Structure and Incorporation of Prior Related Pleadings, Criminal Matters, and Governmental Commissioned Reports".

209. These Defendants refused to update, change, modify, or enact safer and more law abiding Departmental policy, procedures, and/or customs, for ensuring compliance with the law.

210. These policies, procedures, and customs subjected this Plaintiff and thousands of others to rampant constitutional rights, freedoms, privileges, and immunities violations, and affected their rights to be free from specific Government actions and omissions as decided in *Monell v. NY Dept. Social Services*, 436 U.S. 658 (1978).

## PARTIAL LIST OF RICO PREDICATE ACTS

211. Plaintiff alleges and incorporates via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

212. Particular attention of this honorable Court is now drawn to the herein referenced case *US v. Walker*, *US v. Fontan*, and *US v. Cordero* as Defendants Jeffrey Walker, Roberito Fontan, and Rafael Cordero each were convicted of perjury, carrying a firearm during a crime of violence, drug trafficking, making false statements to federal authorities, and other similar charges and were done to further this conspiracy.

213. Other RICO predicate acts are contained within the factual background section previously mentioned herein and are hereby incorporated as if fully stated and set forth.

214. On February 5, 2010, the Plaintiff had a preliminary arraignment at 1301 Filbert Street Philadelphia,
Pennsylvania in Courtroom 406 before Defendant Joseph O'Neill whereby the Plaintiff was deprived of
his honest services.

215. As a result of the attested to and sworn paperwork, and testimony, provided by the Defendants on June
23, 2010 caused to be deposited, mailed, sent, and/or delivered via the United States Postal Service
hearing notices in the case of *Commonwealth v. Santana*, CP-51-CR-7246-2010, to the Philadelphia
District Attorney's Office, the Pre-Trial Services Department, Douglas Lee Dolfman, Esquire, and other
interested parties.

216. As a result of the attested to and sworn paperwork, and testimony, provided by the Defendants on
August 2, 2010 caused to be deposited, mailed, sent, and/or delivered via the United States Postal
Service hearing notices in the case of *Commonwealth v. Santana*, CP-51-CR-7246-2010, to the
Philadelphia District Attorney's Office, the Pre-Trial Services Department, Douglas Lee Dolfman,
Esquire, and other interested parties.

217. As a result of the attested to and sworn paperwork, and testimony, provided by the Defendants on
September 9, 2010 caused to be deposited, mailed, sent, and/or delivered via the United States Postal
Service hearing notices in the case of *Commonwealth v. Santana*, CP-51-CR-7246-2010, to the
Philadelphia District Attorney's Office, the Pre-Trial Services Department, Douglas Lee Dolfman,
Esquire, and other interested parties.

218. As a result of the attested to and sworn paperwork, and testimony, provided by the Defendants on
September 22, 2010 caused to be deposited, mailed, sent, and/or delivered via the United States Postal
Service hearing notices in the case of *Commonwealth v. Santana*, CP-51-CR-7246-2010, to the
Philadelphia District Attorney's Office, the Pre-Trial Services Department, Douglas Lee Dolfman,
Esquire, and other interested parties.

219. As a result of the attested to and sworn paperwork, and testimony, provided by the Defendants on September 24, 2010 caused to be deposited, mailed, sent, and/or delivered via the United States Postal Service hearing notices in the case of *Commonwealth v. Santana*, CP-51-CR-7246-2010, to the Philadelphia District Attorney's Office, the Pre-Trial Services Department, Douglas Lee Dolfman, Esquire, and other interested parties.

220. As a result of the attested to and sworn paperwork, and testimony, provided by the Defendants on September 27, 2010 caused to be deposited, mailed, sent, and/or delivered via the United States Postal Service hearing notices in the case of *Commonwealth v. Santana*, CP-51-CR-7246-2010, to the Philadelphia District Attorney's Office, the Pre-Trial Services Department, Douglas Lee Dolfman, Esquire, and other interested parties.

221. As a result of the attested to and sworn paperwork, and testimony, provided by the Defendants on October 4, 2010 caused to be deposited, mailed, sent, and/or delivered via the United States Postal Service hearing notices in the case of *Commonwealth v. Santana*, CP-51-CR-7246-2010, to the Philadelphia District Attorney's Office, the Pre-Trial Services Department, Douglas Lee Dolfman, Esquire, and other interested parties.

222. As a result of the attested to and sworn paperwork, and testimony, provided by the Defendants on January 7, 2011 caused to be deposited, mailed, sent, and/or delivered via the United States Postal Service hearing notices in the case of *Commonwealth v. Santana*, CP-51-CR-7246-2010, to the Philadelphia District Attorney's Office, the Pre-Trial Services Department, Douglas Lee Dolfman, Esquire, and other interested parties.

223. As a result of the attested to and sworn paperwork, and testimony, provided by the Defendants on March 1, 2011 caused to be deposited, mailed, sent, and/or delivered via the United States Postal Service hearing notices in the case of *Commonwealth v. Santana*, CP-51-CR-7246-2010, to the Philadelphia